IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN O. MARABLE, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-3291-N-BN |
| | § | |
| DEPARTMENT OF COMMERCE, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff John O. Marable, Jr., an African-American man, now 67-years-old, was employed as a patent examiner by the U.S. Patent and Trademark Office (the USPTO) from September 19, 2016 to June 27, 2017. After he was terminated, he reapplied for a patent examiner position and was not selected.

Marable now brings this *pro se* action alleging discrimination, retaliation, and a hostile work environment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967, as amended (the ADEA), 29 U.S.C. § 621 *et seq.*, and asserting an overtime claim under the Fair Labor Standards Act of 1938, as amended (the FLSA), 29 U.S.C. § 201 *et seq*.

United States District Judge David C. Godbey referred Marable's case to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

Defendant Department of Commerce (the DOC) has moved for summary

judgment. *See* Dkt. Nos. 55, 56, & 57. Marable filed a court-ordered response on July 3, 2020. *See* Dkt. No. 59. And, days later, he moved for an extension of time (45 days) to file a second response (and for the Court to strike his first), citing the need to reopen discovery and to strike evidence in the summary judgment motion. *See* Dkt. No. 60.

He then moved for leave to strike evidence and to reopen discovery. *See* Dkt. No. 61. The DOC responded, citing both Federal Rule of Civil Procedure 6(b)(1)(B) and Federal Rule of Civil Procedure 56(d). *See* Dkt. No. 62. And, on July 30, 2020, the Court granted Marable's motions [Dkt. Nos. 60 & 61] insofar as the Court (1) stayed the existing briefing deadlines pending his filing a proper Rule 56(d) motion by September 14, 2020 and (2) temporarily abated and administratively closed this case pending a determination of how much longer to continue briefing. *See* Dkt. No. 63.

On September 15, 2020, Marable filed essentially a response to the summary judgment motion, not a proper Rule 56(d) motion. *See* Dkt. Nos. 64 & 65. The Court therefore reopened his case, designated the September 15 filings as his sole response to the summary judgment motion, and set a reply deadline. *See* Dkt. No. 66. After replying, *see* Dkt. No. 69, the DOC moved for leave to file supplemental evidence in support of its motion for summary judgment, *see* Dkt. No. 70, Marable responded and moved for leave to strike the supplemental evidence, *see* Dkt. No. 71, and the Court granted the DOC's motion for leave and denied the motion to strike but noted that Marable's response will be treated as objections to be accounted for in preparing these findings, conclusions, and recommendation, *see* Dkt. No. 72 (citing *Lewis v. LSG Sky Chefs*, No. 3:14-cv-3107-M-BN, 2016 WL 6902546, at *5 (N.D. Tex. Oct. 26, 2016), *rec.*

*accepted*, 2016 WL 6905960 (N.D. Tex. Nov. 22, 2016)); Dkt. No. 73.

Having considered his objections, the undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should grant the motion for summary judgment and dismiss this lawsuit with prejudice.

## Legal Standards

"In the employment discrimination arena, the 'salutary function of summary judgment' is that it 'allows patently meritless cases to be nipped in the bud.'" *Molden v. East Baton Rouge Sch. Bd.*, 715 F. App'x 310, 313 (5th Cir. 2017) (per curiam) (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017)).

And, under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must

support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve

all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the

existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead

a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all

reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

"[T]he traditional leniency afforded to a *pro se* plaintiff does not excuse [Marable] from [his] burden of opposing summary judgment through the use of competent summary judgment evidence." *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 246 (5th Cir. 2017) (per curiam) (citing *Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[T]his is not to say that pro se plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do.")).

And, "[a]lthough courts should advise *pro se* [parties] of procedural rules," *Brown v. Megg*, 857 F.3d 287, 289 n.1 (5th Cir. 2017) (citing *Davis*, 798 F.3d at 293-94), the United States Court of Appeals for the Fifth Circuit "has held that they need not be given additional notice of the consequences of a summary judgment motion and the right to submit opposing affidavits as the notice given by Rule 56 and the local rules suffices," *id.* (citing *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992)).[1]

That said, the verified complaint and sworn interrogatory answers of a *pro se*

---

[1] *See also Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) ("[T]here is a point at which even *pro se* litigants must become responsible for the prosecution of their own cases if their claims are to warrant the court's attention. It is not unjustifiably onerous to require *pro se* parties to respond to proper motions for summary judgment. All summary judgment nonmovants shoulder the same obligation. District courts can make appropriate allowances for *pro se* responses that may be somewhat less-artfully written than those of represented parties. This can be accomplished, however, without excusing them from the most basic requirement that they file a response.").

litigant can be considered as summary judgment evidence to the extent such pleadings comport with the requirements of Rule 56(e). *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit.").

## Analysis

I.   The Court should dismiss Marable's Title VII and ADEA claims because he has sued the wrong defendant, a deficiency that he was notified of at the outset of <u>this case but then failed to timely correct.</u>

Marable named as defendants in his complaint the DOC; Wilbur Ross, then Secretary of Commerce; Joseph Matel, identified as Director of the USPTO; and Timothy Callahan, identified as "USPTO, Director of Technology Center 3700." Dkt. No. 3 at 2-3. But Marable dismissed his claims against Ross, Matel, and Callahan without prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(i) on March 10, 2019, the date that he filed the Notice of Nonsuit [Dkt. No. 10]. *See* Dkt. No. 23 (citing *Welsh v. Correct Care, L.L.C.*, 915 F.3d 341, 344 (5th Cir. 2019); *Plains Growers By & Through Florists' Mut. Ins. Co. v. Ickes-Braun Glasshouses, Inc.*, 474 F.2d 250, 255 (5th Cir. 1973)). And, when the DOC answered the complaint on April 12, 2019 – "without waiving any defenses or affirmative defenses to which [it] may be entitled" – it first observed that Marable

> filed a "notice of nonsuit" with respect to all other defendants named in the complaint. *See* Doc. 10. With respect to the Department of Commerce, which is the remaining defendant, the U.S. Patent and Trademark Office (USPTO) – not the Department of Commerce – is the properly named defendant in an employment action against the USPTO. Under 35 U.S.C. § 1(a), the USPTO maintains certain independence from the Department of Commerce, including independent control of its

personnel decisions and other administrative and management functions. With respect in particular to Plaintiff's claims pursuant to Title VII and the ADEA, the proper defendant is the director of the USPTO.

Dkt. No. 13 at 1 & n.1.

The DOC now moves to dismiss Marable's Title VII and ADEA claims against it because he has failed to name the correct defendant: "Plaintiff failed to name the director of the USPTO as a defendant in his suit and, despite the note in Defendant's answer, did not amend his complaint or otherwise seek to join the USPTO director as a party. This Court therefore has 'no alternative but to dismiss the [claims] for lack of a proper party defendant.'" Dkt. No. 56 at 20-21 (quoting *Quevedo v. Army & Air Force Exch. Serv.*, 234 F.3d 29 (table), 2000 WL 1568186, at *1 (5th Cir. 2000) (per curiam)); *see Quevedo*, 2000 WL 1568186, at *1 ("By statute, the only proper party defendant in either a Title VII action or an [ADEA] action brought against the United States is the head of the agency in which the alleged discriminatory acts occurred. 42 U.S.C. § 2000e-16(c); *Honeycutt v. Long*, 861 F.2d 1346 (5th Cir. 1988).... A pro se party is in no way exempted from compliance with the relevant rules of procedure and substantive law. *Hulsey v. State of Texas*, 929 F.2d 168, 171 (5th Cir. 1991). Because Ms. Quevedo's motion to change defendants came after the entry of a final judgment by the district court it was void and ineffective.").[2]

---

[2] *See also, e.g.*, *Kaswatuka v. U.S. Dep't of Homeland Sec.*, No. 4:19-cv-947-A, 2020 WL 3038073, at *2 (N.D. Tex. June 5, 2020) ("[U]nder Title VII, the only proper defendant is the head of the department, agency, or unit. As plaintiff has failed to name the Acting Secretary of the Department of Homeland Security as a defendant, her claims under Title VII must be dismissed. That plaintiff is now

Marable responds that the DOC should have made this argument when he filed his nonsuit (in March 2019); that a "'a pass over' decision, dated March 23, 2018, is sufficient evidence to show that the USPTO does not maintain complete independency of all its personnel matters"; and that, regardless, he should "be allowed to amend his EEO Complaint to include the Head Official for the USPTO." Dkt. No. 64 at 14-15.

First, the DOC had yet to appear at the time that Marable moved to nonsuit the individual defendants. And, when the DOC first appeared, in April 2019, it notified Marable that it, the sole remaining defendant, was not the proper party as to his Title VII and ADEA claims. *See* Dkt. No. 13 at 1 & n.1.

Further, as the DOC recognizes, dismissal based on Marable's failure to name a proper defendant for his Title VII and ADEA claims may be brought under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. *See* Dkt. No. 69 at 5-6.[3]

And the DOC has not waived this defense. *See id.* at 6 (citing *C&C Inv. Props., L.L.C. v. Trustmark Nat'l Bank*, 838 F.3d 655, 660 (5th Cir. 2016)). Any argument

---

proceeding *pro se* does not exempt her from compliance with applicable rules of procedure and substantive law." (footnote and citations omitted)).

[3] *See also, e.g.*, *Smith v. U.S. Postal Serv.*, 275 F. App'x 447, 447 (5th Cir. 2008) (per curiam) ("The only correct party of suit in a Title VII employment discrimination claim against the USPS is the Postmaster General. *See* 42 U.S.C. § 2000e-16(c); *Montgomery v. U.S. Postal Serv.*, 867 F.2d 900, 902 (5th Cir. 1989). Smith filed suit against the USPS and never sought to amend his pleading. In February 1995, the district court granted USPS's Rule 12(b)(6) motion because Smith failed to name the proper party as defendant and entered a judgment dismissing Smith's suit with prejudice.").

otherwise

> reveals a basic misunderstanding of the rules of civil procedure. Rule 12(b)(6) provides a means by which a defendant may seek to dismiss a claim at the pleading stage; it does not require that a defense be asserted through that procedure. FED. R. CIV. P. 12(b) ("Every defense to a claim for relief must be asserted in the responsive pleading if one is required. But a party *may* assert the following defenses by motion ... (6) failure to state a claim upon which relief can be granted." (emphasis added)); FED. R. CIV. P. 12(h)(1) (omitting a Rule 12(b)(6) defense from the defenses that may be subject to waiver by failure to assert at the Rule 12 stage). Rule 12 expressly provides that a defendant not pursuing a Rule 12(b)(6) defense at the pleading stage may raise it later in the litigation, including at trial. FED. R. CIV. P. 12(h)(2)(C) (stating that "failure to state a claim upon which relief can be granted ... may be raised ... at trial"). And it is common that affirmative defenses sometimes raised in Rule 12(b)(6) motions, take a limitations defense as but one example, may also be raised via a summary judgment motion. *See e.g.*, *FDIC v. Dawson*, 4 F.3d 1303, 1306 (5th Cir. 1993). One obvious reason a defendant may wait is that a Rule 12(b)(6) motion typically cannot rely on evidence outside the complaint. *See Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). But even when there is no apparent reason for doing so, the rules allow a defendant to assert an affirmative defense that may have been suitable for Rule 12(b)(6) disposition at the summary judgment stage.

*C&C Inv. Props.*, 838 F.3d at 660.

As to the evidence Marable points to in response, the "pass over" decision, the DOC replies that it "does not dispute that the Department of Commerce approved the USPTO's request to pass over Plaintiff's application for reemployment, [but] the USPTO is still the relevant agency in an employment action filed by a USPTO employee" and, "[e]ven if the Department of Commerce was the relevant agency, Plaintiff still failed to name an agency head, as is required for an employment discrimination claim such as his." Dkt. No. 69 at 6. The undersigned agrees. Marable's cited evidence does not excuse his failure to name the proper defendant for his claims under Title VII and the ADEA.

And, even if the Court construes Marable's September 15, 2020 response to the summary judgment motion as a motion for leave to amend his complaint or to join an additional defendant, leave should be denied.

June 15, 2019 was the deadline for motions for leave to join additional parties and to amend the pleadings imposed by the Initial Scheduling Order entered under Federal Rule of Civil Procedure 16(b). *See* Dkt. No. 21, ¶¶ 2, 3.

"District courts must have the power to control their dockets by holding litigants to a schedule." *Shepherd v. City of Shreveport*, 920 F.3d 278, 288 (5th Cir. 2019) (citing *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 258 (5th Cir. 1997)). Indeed, district court are empowered "to control their dockets by refusing to give ineffective litigants a second chance to develop their case." *Reliance Ins. Co.*, 110 F.3d at 258 (citing *Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 208-09 (5th Cir. 1992)). To facilitate this, "[t]he Federal Rules of Civil Procedure state that a pretrial schedule may be modified 'only for good cause.'" *Shepherd*, 920 F.3d at 287 (quoting FED. R. CIV. P. 16(b)(4)).

To meet this standard, parties must show that, despite their diligence, they could not reasonably have met the deadline in the scheduling order. *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir. 2003); *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015) ("To show good cause, the party seeking to modify the scheduling order has the burden of showing that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." (internal quotation marks omitted)); *see also Sosa v. Airprint Sys., Inc.*, 133 F.3d

1417, 1418 (11th Cir. 1998) ("This good cause standard precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." (citations and internal quotation marks omitted)); *cf., e.g.*, *Puig v. Citibank, N.A.*, 514 F. App'x 483, 488 (5th Cir. 2013) (per curiam) ("[T]o determine whether the district court abused its discretion in finding no good cause to modify its scheduling order, we look to the [party's] diligence in [obtaining compliance] within the scheduling order's timeline.").

In exercising its authority to determine whether to modify a scheduling order for good cause under Federal Rule of Civil Procedure 16(b)(4), the Court considers four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S&W Enters.*, 315 F.3d at 536 (quoting *Reliance Ins. Co.*, 110 F.3d at 257 (quoting, in turn, *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990))).

While "[t]he court considers the four factors holistically and 'does not mechanically count the number of factors that favor each side,'" *Harrison v. Wells Fargo Bank*, No. 3:13-cv-4682-D, 2016 WL 3612124, at *2 (N.D. Tex. July 6, 2016) (quoting *EEOC v. Serv. Temps, Inc.*, No. 3:08-cv-1552-D, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009)), "[t]he absence of prejudice to the nonmovant and inadvertence of the party seeking the modification are insufficient to demonstrate 'good cause,'" *Barnes v. Sanchez*, No. 3:07-cv-1184-M, 2010 WL 5027040, at *1 (N.D. Tex. Dec. 2, 2010) (footnote omitted).

Marable was first notified of this pleading deficiency on April 12, 2019. *See* Dkt. No. 13 at 1 & n.1. On May 14, 2019, after a scheduling conference with the parties, *see* Dkt. No. 20, the Court set June 15, 2019 as the deadline to move for leave to join additional parties and to amend the pleadings, *see* Dkt. No. 21, ¶¶ 2, 3. That Marable first moved for leave – not through a formal motion but through arguments in a brief – some 15 months after that deadline reveals a lack of diligence that would prevent granting leave under Rule 16(b)(4)'s good cause standard. *See S&W Enters.*, 315 F.3d at 535; *Squyres*, 782 F.3d at 237; *Sosa*, 133 F.3d at 1418; *Puig*, 514 F. App'x at 488; *cf.* Dkt. No. 21, ¶ 1 ("Because Plaintiff is a *pro se* litigant, the Court may hold Plaintiff's filings to a less stringent standard than papers drafted and filed by an attorney. But this is Plaintiff's lawsuit, and, ultimately, Plaintiff must prove an entitlement to relief.").

The Court should therefore dismiss Marable's claims under Title VII and the ADEA.

II.    *Alternatively*, the Court should grant the DOC summary judgment as to Marable's claims of retaliation, whether made under Title VII, the ADEA, or both, because he has not exhausted administrative remedies as to a claim of <u>retaliation.</u>

Generally speaking, "[t]o bring a suit under Title VII … or the ADEA (age), a complainant must file a charge of discrimination with the EEOC to exhaust his administrative remedies." *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 378-79 (5th Cir. 2019) (citing, as applicable, *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 77 (5th Cir. 1982) (Title VII); *Foster v. Nat'l Bank of Bossier City*, 857 F.2d 1058, 1060 (5th Cir. 1988) (ADEA))). At least as to non-federal employees, these "charge-filing

instruction[s are] not jurisdictional…. [Instead,] they are properly ranked among the array of claim-processing rules that must be timely raised to come into play." *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1846 (2019).[4] Accordingly, "[f]ailure to exhaust is an affirmative defense that should be pleaded." *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir. 2019) (citations omitted), *aff'd*, 139 S. Ct. 1843. It has here. *See* Dkt. No. 13 at 11. And the DOC moves for summary judgment on its contention that Marable failed to exhaust a retaliation claim. *See, e.g.*, Dkt. No. 56 at 22-24.

To determine "whether a plaintiff has exhausted a particular claim, [the Fifth Circuit has] noted that 'the scope of an EEOC complaint should be construed liberally.'" *Patton v. Jacobs Eng'g Group, Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (quoting *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)). But this construction must be weighed against Title VII's goal of "trigger[ing] the investigatory and

---

[4] *See also Williams v. Wolf*, No. 19-cv-00652-JCS, 2019 WL 6311381, at *6 (N.D. Cal. Nov. 25, 2019) (concluding that the exhaustion requirement is also nonjurisdictional as to Title VII claims brought by federal employees, after observing that "the Supreme Court has also applied the principle 'that procedural rules, including time bars, cabin a court's power only if Congress has "clearly state[d]" as much' – the same rule applied in *Fort Bend* – to hold that filing deadlines under the Federal Tort Claims Act ('FTCA') are not jurisdictional" and that this "conclusion was not altered by the fact that the FTCA, like the provision of Title VII [applicable to federal employees], operates as a waiver of sovereign immunity" (quoting *United States v. Kwai Fun Wong*, 574 U.S. 402, 409 (2015), then citing *Fort Bend Cnty.*, 139 S. Ct. at 1849-50 (citing, in turn, *Kwai Fun Wong* as among multiple cases in which "[t]he Court has characterized as nonjurisdictional an array of mandatory claim-processing rules and other preconditions to relief"); citation omitted)); *Thomas v. Shanahan*, No. 18-cv-2170 (DLF), 2019 WL 3997440, at *3 (D.D.C. Aug. 23, 2019) (same), *aff'd*, No. 19-5247, 2020 WL 1918326 (D.C. Cir. Apr. 2, 2020) (per curiam).

conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Pacheco*, 448 F.3d at 788-89. So, to attain a balance between the two, courts in this circuit interpret

> "what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id.* at 789 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). "[Courts should] engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Id.*

*Patton*, 874 F.3d at 443.

During his deposition, Marable testified that the scope of his retaliation claim is that his not being rehired was in retaliation for his previously pursuing administrative remedies based on alleged discrimination. *See* Dkt. No. 57-3 at 228. But Marable filed his administrative complaint on August 17, 2017. *See, e.g.*, Dkt. No. 57-2 at 55. And, when he amended the complaint through a letter dated January 2, 2018, he failed to mention this allegedly retaliatory conduct. *See id.* (alleging "[i]n short, there is a massive breakdown in procedures, processes and management attentiveness at several levels of USPTO's operation. In my judgment, it reflects an intentional and willful effort to discriminate against me for being both an African American and a veteran."). So, based on the administrative complaint as amended, no investigation that could reasonably be expected to emerge from its substance would implicate the retaliation claim that Marable now brings.

Accordingly, to the extent that the Court does not dismiss Marable's Title VII and ADEA claims against the DOC based on his failure to name the correct

defendant, the Court should grant the DOC summary judgment as to Marable's claims of retaliation (under both statutes).

III.  *Alternatively*, the Court should grant the DOC summary judgment as to Marable's Title VII and ADEA claims of discrimination and a hostile work environment because he has not established a prima facie case of either under either statute.

Marable alleges that, when he was employed by the USPTO and when he applied for reemployment, he was discriminated against based on his race and age and subjected to a hostile work environment, in violation of Title VII and the ADEA. "'In employment discrimination cases, a plaintiff may present his case by direct or circumstantial evidence, or both.'" *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019) (citations and footnote omitted); *cf. McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 456 (5th Cir. 2019) ("'Direct evidence of discrimination ... prove[s] the existence of a fact ... without any inferences or presumptions.' Most often, direct evidence takes the form of a discriminatory statement directly connected to the plaintiff's discharge." (quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993), then citing *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010))).

Because Marable has not provided "direct evidence that discriminatory animus played a role in the decision[s] at issue, the burden of persuasion shifts to the [DOC, which] must prove that it would have taken the same action regardless of discriminatory animus." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002) (citation omitted). And, when "the plaintiff only produces circumstantial evidence of discrimination, the well-known burden-shifting analysis set forth in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), guides [a court's] inquiry." *Nall*, 917 F.3d at 340 (citation omitted).

"Although *McDonnell Douglas* is a Title VII case, … its framework is applicable to ADEA cases." *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 n.3 (5th Cir. 1996) (citation omitted). Under it, "(1) the plaintiff must demonstrate a *prima facie* case of discrimination; (2) the burden of production shifts to the employer to establish a legitimate and nondiscriminatory basis for the adverse employment decision; and (3) the plaintiff must then prove by a preponderance of the evidence that the employer's proffered reason is pretext." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802-04, citation omitted).

"In the Rule 56 context, a prima facie case … plus a showing that the proffered reason is pretextual is typically enough to survive summary judgment." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2015) (citation omitted). But "[a] plaintiff relying on circumstantial evidence must marshal competent summary judgment evidence to present a prima facie case" and, ultimately, "must then create a genuine issue of material fact that [an employer's] reasons are merely pretextual." *Cavada v. McHugh*, 589 F. App'x 717, 719 (5th Cir. 2014) (per curiam) (citation omitted).

To establish a prima facie claim of discrimination under Title VII, a plaintiff must show that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected

group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)). Similarly, "[i]n a typical ADEA case, the plaintiff must show that '(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.'" *McMichael*, 934 F.3d at 456 n.4 (quoting *Bodenheimer*, 5 F.3d at 957).

And, to establish a prima facie case of hostile work environment under either statute, Marable must "demonstrate that (1) he is in a protected class; (2) he suffered unwelcome harassment (3) that was based on his membership in the protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment, but did not take proper remedial action." *Hackett v. United Parcel Serv.*, 736 F. App'x 444, 450 (5th Cir. 2018) (per curiam) (citing, as applicable, *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (Title VII); *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (ADEA)).

Marable's ability to establish a prima facie case of discrimination under Title VII and the ADEA turns on his identifying a proper comparator, to meet the fourth prong. To do so, Marable must, through competent summary judgment evidence, show that an alleged comparator outside his protected group "under nearly identical circumstances" was treated more favorably. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009); *see also Wright v. Chevron Phillips Chem. Co., L.P.*, 734 F.

App'x 931, 934 (5th Cir. 2018) (per curiam) ("Both the comparator and the conduct must be 'nearly identical' (except for the protected characteristic) to the person and situation in question yet the two yielded dissimilar results." (citations omitted)); *Noble v. Lear Siegler Svcs., Inc.*, 554 F. App'x 275, 276 (5th Cir. 2014) (per curiam) (rejecting an African-American plaintiff's claim that he established this prima facie element by asserting that "five Caucasian men in his unit kept their jobs" because he failed to "show that these comparators were under 'nearly identical circumstances'" by presenting "evidence regarding the comparators' job descriptions, qualifications, experience, work and disciplinary history, or other information that would indicate that they were similarly situated" (quoting *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001))); *Reyna v. Donley*, 479 F. App'x 609, 611-12 (5th Cir. 2012) (per curiam) ("An employee must proffer a comparator who was treated more favorably 'under nearly identical circumstances,' which is satisfied when 'the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.'" (quoting *Lee*, 574 F.3d at 260)).

Marable identifies Kenneth Beyers and David Deal, both Caucasian patent examiners, and responds to the summary judgment motion that the USPTO "allowed [Beyers], who failed to meet [his] production quotas, to be selected to permanent status," "whereas [her was] immediately terminated"; that the USPTO "allowed [Deal and Beyers] to be re-hired" but "vehemently denied Marable's reemployment applications"; that "Beyers' performance rating was about the same as Marable's,"

but the USPTO allowed Beyers to work "beyond his 12-month probation period" and retire after it "started processing [his] termination paperwork." Dkt. No. 64 at 10-11, 17; *see also* Dkt. No. 3 at 5, ¶ 9 ("The Agency allowed prior Caucasian Patent Examiners (David Deal, Kenneth Beyers, and several others) to be rehired, whereas they vehemently denied Plaintiff's reemployment applications."). He further identifies James Miller and William Welles, also both Caucasian. *See* Dkt. No. 64 at 17; Dkt. No. 3 at 6, ¶ 10. But Marable has not come forward with competent summary judgment evidence to show that any individual identified was treated more favorably than him under nearly identical circumstances. All he has done is "[m]erely identify[] other employees who he believes enjoyed more opportunities," which "is insufficient" as to this prong. *Pollack v. Lew*, 542 F. App'x 304, 306-07 (5th Cir. 2013) (per curiam) (original brackets omitted). The Court should therefore dismiss the discrimination claims.

As to Marable's claims of a hostile work environment, to satisfy the third prong of a prima facie case, "the complained-of conduct" must be based on the protected characteristic (race or age) and

> must be both objectively and subjectively offensive. This means that not only must a plaintiff perceive the environment to be hostile, but it must appear hostile or abusive to a reasonable person. To determine whether conduct is objectively offensive, the totality of the circumstances is considered, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance."

*Dediol*, 655 F.3d at 441 (citing and quoting *EEOC v. WC&M Enters.*, 496 F.3d 393, 399 (5th Cir. 2007)).

Marable alleges that his supervisor, Thanh Truong "regularly berated and disparaged [him]; accused [him] of being a liar; deliberately kept [him] from meeting his performance goals; and forced [him] to work on federal holidays and the weekends without any additional compensation for over-time and/or holiday pay." Dkt. No. 3 at 6, ¶ 11; *see* Dkt. No. 57-3 at 229 (confirming that his hostile work environment claims are based solely on Truong's alleged actions and that this alleged hostility began in "October and November of 2017"). But, even if the Court accepts Marable's allegations concerning Truong's alleged hostility as true, Marable has not shown that these acts were motivated by either race or age nor "establish[ed] the sort of 'severe or pervasive' harassment that is required for a hostile work environment claim." *Hackett*, 736 F. App'x at 450 (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)). The Court should therefore dismiss the claims of a hostile work environment.

Accordingly, to the extent that the Court does not dismiss Marable's Title VII and ADEA claims against the DOC based on his failure to name the correct defendant, the Court should grant the DOC summary judgment as to Marable's claims of discrimination and a hostile work environment (under both statutes) because Marable has failed to establish a prima facie case.

IV. **The Court should grant the DOC summary judgment as to Marable's FLSA overtime claim.**

"The FLSA was 'enacted in 1938 to protect all covered workers from substandard wages and oppressive working hours.'" *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 785 (5th Cir. 2020) (quoting *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2121 (2016)). And "[t]he Fair Labor Standards Amendments

of 1974 … extend[ed the FLSA's] protections to federal employees." *Perez v. Potter*, 553 U.S. 474, 499 (2008) (Roberts, C.J., dissenting) (citation omitted). Nevertheless, "[t]he FLSA exempts from coverage 'executive, administrative, and professional' employees." *Al-Beshrawi v. Chao*, No. 5:06CV369, 2007 WL 1231477, at *7 (N.D. Ohio Apr. 23, 2007) (quoting 29 U.S.C. § 213(a)(1)).

For example, "[a]t the USPTO, all patent examiners at the grade level GS-9 and above are exempt from FLSA coverage based on the 'professional' exemption." *Id.* (citation omitted); *see also id.* at *8 ("[T]he USPTO relies on its own Standard Operating Procedure (SOP), to determine exemptions from coverage. In accordance with the USPTO's SOP, all patent examiner positions at GS-9 and above are exempt from FLSA coverage.").

Marable was hired as a GS-9 patent examiner at the USPTO. *See* Dkt. No. 57 at 11, 46. And he admits that his position at the USPTO was exempt from FLSA coverage. *See* Dkt. No. 57-3 at 247.

The Court should therefore grant the DOC summary judgment as to this claim.

## Recommendation

The Court should grant Defendant Department of Commerce's motion for summary judgment [Dkt. No. 55] and dismiss this case with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV.

P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 28, 2021

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE